UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRETT HOBSON, | ) |
|            Plaintiff, | ) |
|     v. | ) No. 1:21-cv-00337-JPH-MPB |
| E. KONKLE, <br> J. MATLOCK, | ) |
|            Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Brett Hobson contracted COVID-19 while incarcerated at the Indiana Department of Corrections' Pendleton facility. He is pursuing an Eighth Amendment claim for money damages against two individual officers for their alleged deliberate indifference to the substantial risk of serious harm caused when they confiscated his face mask. Dkt. 9 at 2. The defendants have filed a motion for summary judgment. Dkt. [28]. For the reasons explained below, the motion for summary judgment is **GRANTED** because the defendants are entitled to qualified immunity.

## I.
## Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine

dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.
## Factual Background

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Mr. Hobson was incarcerated at the Pendleton Correctional Facility during the height of the COVID-19 pandemic. Dkt. 1 at 1. During the time relevant to Mr. Hobson's complaint, he was housed in a cell that had a barred, rather than solid, door. Dkt. 28-1 at 8. Mr. Hobson's housing unit was on quarantine and movement was restricted, so Mr. Hobson and the other prisoners could only leave their cells to shower. Dkt. 28-1 at 7.

During this time there was a state-wide mask mandate. Dkt. 39 at 2. Mr. Hobson was given a cloth face mask by prison staff in late September or early October of 2020. Dkt. 28-1 at 7-8. The other prisoners had masks as well, and all prisoners were to wear their mask any time they left their cell. *Id.* Mr. Hobson was informed that he should wash his hands and wear his mask to prevent the spread of COVID-19 and that quarantines would be in place until two weeks after the last positive case. Dkt. 37-1 at 4-5.

On October 24, 2020, Mr. Hobson threw trash and other items onto a fire started in front of his cell. He received a conduct report for arson and was placed on strip cell status. Dkt. 37-1 at 2. On November 3, 2020, Mr. Hobson was again placed on strip cell status after allegedly throwing hot water on a correctional officer. Dkt. 28-1 at 4.

Officer Konkle and Sgt. Matlock were responsible for stripping Mr. Hobson's cell. Dkt. 37-1 at 3. They wore masks when they interacted with Mr. Hobson on November 3, 2020. Dkt. 28-1 at 8. They confiscated most of Mr. Hobson's belongings, including his coat, which had his cloth mask in a pocket. Dkt. 28-1 at 4 and 6; *see also* dkt. 37-1 at 9 (property inventory).

Mr. Hobson requested a mask after his was taken, but no more masks were available. Dkt. 28-1 at 4. Mr. Hobson was provided with three masks approximately two weeks later. Dkt. 37-1 at 6. Even before Mr. Hobson's mask was confiscated, he did not wear it while he was in his cell. Dkt. 28-1 at 8. He would only wear his mask when he left his cell or when somebody came to his door. *Id.*

Mr. Hobson tested positive for COVID-19 around November 17, 2020. *Id.* at 7.

### III.
### Discussion

Mr. Hobson is proceeding on his claim that the defendants were deliberately indifferent to a substantial risk of serious harm. Defendants argue that they are entitled to judgment as a matter of law based on qualified immunity.

#### A. Qualified Immunity

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly.* 137 S.Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). To make a qualified immunity

4

determination, the Court must "(1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation." *Sparing v. Village of Olympia Fields,* 266 F.3d 685, 688 (7th Cir. 2001) (*citing Saucier v. Katz*, 533 U.S. 194 (2001) (citations omitted)). "[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 227 (2009)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing*, 266 F.3d at 688 (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999)).

There are three ways Mr. Hobson can demonstrate a right is "clearly established." *Stockton v. Milwaukee Co.*, 44 F.4th 605, 620 (7th Cir. 2022). First, he can point to "a closely analogous case finding the alleged violation unlawful." *Id.* (cleaned up). Second, he can identify "in the relevant caselaw such a clear trend ... that [the court] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (cleaned up). Third, he can argue that this is the "rare case" where the officers' "conduct was 'so egregious and unreasonable that no reasonable official could have thought he was acting lawfully.'" *Id.* at 620–21 (cleaned up).

### B. Right to Cloth Face Mask

It is clearly established that prison officials are required not to "be deliberately indifferent to the exposure of inmates to a serious, communicable

5

disease" under the Eighth Amendment. *Helling v. McKinney,* 509 U.S. 25, 33 (1993). And although COVID-19 was a new virus, the duty to protect inmates from needless exposure to a serious illness "need not be litigated and then established disease by disease[.]" *Estate of Clark v. Walker,* 865 F.3d 544, 553 (7th Cir. 2017). But the issue in this case is whether the defendants were on notice that their conduct—confiscating Mr. Hobson's cloth mask—violated Mr. Hobson's Eighth Amendment rights.

Defendants argue that Mr. Hobson provides no evidence to show that it was clearly established on November 3, 2020, that their confiscation of his face mask violated his Eighth Amendment rights, when he voluntarily chose not to wear a mask 23 hours a day, and during the one hour a day he would have worn his mask while out of his cell, everyone he interacted with was wearing a mask. In addition, Mr. Hobson explained that while he was in his cell, he was able to remain socially distanced. Dkt. 37 at 5. He was surrounded by walls on three sides and was able to remain at least six feet away from anyone. *Id.*

Mr. Hobson has cited no cases that suggest that the constitution or federal law requires prison officials to provide a face mask under these circumstances, and the Court can find none. Instead, many courts have granted qualified immunity to jail and prison administrators given the evolving nature of the virus and the related recommendations for keeping incarcerated individuals safe. *See, e.g., Jones v. Burt,* Case No. 1:21-cv-41, 2022 WL 4244298, *5 (W.D. Mich. July 15, 2022) (finding officers entitled to qualified immunity on claim related to failure to social distance because "[n]o court has found that the inability of prison

6

officials to ensure social distancing occurs during the COVID-19 pandemic . . . violates the Eighth Amendment."); *Ross v. Russell*, Case No. 7:20-cv-000774, 2022 WL 767093, *14 (W.D. Va., Mar. 14, 2022) (finding jail officials were entitled to qualified immunity because, given the ongoing and changing guidance from health officials as to a novel virus, "neither the policies or occasional lapses [in enforcing the policies] were clearly insufficient to protect prisoners"); *Wilford v. Plasse*, No. 2:21-cv-00016-JMS-MJD, 2023 WL 1766002, at *5 (S.D. Ind. Feb. 3, 2023) (finding defendants entitled to qualified immunity where they followed health department's recommendations, but placed detainees in overcrowded cells, failed to implement a universal mask rule, and failed to procure COVID-19 tests).

Mr. Hobson argues without citation to any evidence or authority that "Defendants are not entitled to qualified immunity because taking plaintiff's mask violated the job description of a correctional officer and was not part of the strip cell process." Dkt. 37 at 3 and 5. In addition, he contends that taking his mask prevented him from the protection afforded to him by the State of Indiana and Governor Holcomb. Dkt 37 at 5. But job descriptions, prison policies, and a state-wide mandate do not set a constitutional standard. *See Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020) (CDC guidelines do not set constitutional standard); *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) (noting that evidence of policy or procedure does not set the constitutional standard); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983

7

protects plaintiffs from constitutional violations, not violations of state laws or … departmental regulations").

In short, the defendants have raised qualified immunity, and Mr. Hobson has not demonstrated that the right to possess a cloth face mask was clearly established on November 3, 2020. He has not pointed to a closely analogous case finding the alleged violation unlawful. *Stockton,* 44 F.4th at 620. Nor has he identified a clear trend in the caselaw such that recognition of the right to possess a cloth face mask was merely a question of time. *Id.*

Finally, Mr. Hobson has not shown that the officers' conduct was so egregious and unreasonable that no reasonable official could have thought he was acting lawfully. *Stockton,* 44 F.4th at 620. The officers confiscated Mr. Hobson's coat and his mask was in the pocket. Another officer offered to get Mr. Hobson another mask the same day his was confiscated, but the facility did not have any more available. Dkt. 28-1 at 6. When more masks became available approximately two weeks later, Mr. Hobson was given three. During the time he was without a mask, he could socially distance except for when he was escorted to the shower. And even then, everyone he interacted with wore a mask. Under these circumstances, the denial of a mask was not egregious or unreasonable. *See Lamar v. Neal*, No. 3:21-cv-399-JD-MGG, 2021 WL 4893602, at *2 (N.D. Ind. Oct. 19, 2021) (Prison officials entitled to deference on security issues, including denial of mask to prisoner. It was also not evident that denying mask to prisoner, housed alone in his cell, posed an undue risk to his safety.). Especially in these circumstances, Mr. Hobson points to no evidence that prison officials should

8

have viewed cloth masks as so effective or important in preventing COVID-19 infection that it could be a constitutional violation not to provide one. This is therefore not the "rare case" when the officers' conduct was "so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Stockton*, 44 F.4th at 620.

Defendants Konkle and Matlock are therefore entitled to qualified immunity for confiscating Mr. Hobson's face mask.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED.** Dkt. [28]. The Defendants are entitled to summary judgment on qualified immunity grounds because Mr. Hobson has not shown a clearly established right to a cloth mask as an additional COVID-19 safeguard.

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 3/31/2023

                                                James Patrick Hanlon
                                                United States District Judge
                                                Southern District of Indiana

Distribution:

BRETT HOBSON
935709
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov